1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9  United States of America,                    )   CR 05-0546-PHX-NVW
                                                )
10              Plaintiff-Respondent            )   CV 10-0043-PHX-NVW (ECV)
                                                )
11  vs.                                         )
                                                )   **REPORT AND RECOMMENDATION**
12                                              )
    Abraham Beltran Moreno,                     )
13                                              )
                Defendant-Movant.               )
14                                              )
                                                )
15  ─────────────────────────────────────

16  TO THE HONORABLE NEIL V WAKE, UNITED STATES DISTRICT JUDGE:

17      Abraham Beltran Moreno ("Movant"), has filed an Amended Motion to Vacate, Set

18  Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  Doc. 7.[1]

19                              **BACKGROUND**

20      On March 8, 2007, Movant pled guilty to eight felony offenses in the Superseding

21  Indictment (Doc. 43 of CR 05-0546): Conspiracy to Possess with Intent to Distribute

22  Methamphetamine[2] (Count One); three counts of Possession with Intent to Distribute

23  Methamphetamine (Counts Three, Four and Eight); Possession with Intent to Distribute

24

25      [1] The docket numbers refer to the civil case, CV 10-0043, unless otherwise indicated.

26      [2] The criminal case Judgment (Doc. 393 of CR 05-0546) mistakenly includes heroin

27  and cocaine base as part of the conspiracy in Count One, but the transcript of the change of
    plea hearing makes it clear that the conspiracy to possess with intent to distribute only

28  involves methamphetamine.  Doc. 11, Attachment E at 35-36.

Heroin (Count Five); Possession with Intent to Distribute Cocaine Base (Count Six); and two counts of Possession of a Firearm in Furtherance of a Drug Crime (Counts Seven and Eleven).  Doc. 11, Attachment E at 35-39; Doc. 393 of CR 05-0546.  On July 25, 2007, Movant was sentenced to prison for a total of 420 months, which consisted of 300 months on Counts One, Three, Four, Six and Eight, to run concurrently; 60 months on Count Five to run concurrently with Counts One, Three, Four, Six and Eight; 60 months on Count Seven, to run consecutively to Counts One, Three, Four, Six and Eight; and 60 months on Count Eleven, to run consecutively to Count Seven.  Doc. 393 of CR 05-0546.  On each count he was also sentenced to five years of supervised release upon release from custody, those terms to run concurrently.  Id.

Movant filed a Notice of Appeal on July 31, 2007.  Doc. 401 of CR 05-0546.  In a published opinion filed on February 10, 2009, the Ninth Circuit Court of Appeals affirmed Movant's sentences after he challenged the District Court's imposition of two consecutive five-year sentences for the firearms offenses.  United States v Beltran-Moreno, 556 F.3d 913 (9th Cir. 2009).  The Ninth Circuit explained that Movant should consider himself fortunate because his sentence was less than what was required by law.  Id. at 915.  Under 18 U.S.C. § 924(c) Movant was supposed to receive a consecutive 25-year prison term for the second firearms offense, leading to an overall mandatory minimum sentence of no less than 40 years in prison, five more that what he actually received.  Id. at 915.

On February 22, 2010, Movant filed the pending Amended Motion to Vacate.  Doc. 7.  The District Court screened the amended motion on March 15, 2010, and ordered Respondent to answer the allegations.  Doc. 8.  Movant identifies two grounds for relief.[3] First, Movant alleges that his right to due process under the Fifth Amendment was violated

---

[3] Movant's summary descriptions of the two grounds for relief claim the constitutional violations occurred during the trial court proceedings and on direct appeal.  However, neither Movant's 23-page memorandum in support of his grounds for relief nor his reply make any mention of the direct appeal.  Because Movant presents nothing about any alleged violations during the direct appeal, the court will only address the trial court proceedings.

1   when his guilty pleas to the court were not knowingly, intelligently and voluntarily made.

2   Second, Movant alleges that his attorney provided ineffective assistance of counsel in

3   violation of the Sixth Amendment.  Movant claims his attorney failed to properly counsel

4   him about the plea agreement prior to his first change of plea hearing, and then later induced

5   Movant into pleading guilty to the court without the benefit of a plea agreement.

6   Respondent filed a Response to Amended Motion to Vacate on July 14, 2010.  Doc. 11.

7   Movant then filed a Traverse to Government's Response on August 5, 2010.  Doc. 12.

8                                          **DISCUSSION**

9          Respondent argues in its response that Movant's guilty pleas were knowingly and

10  voluntarily made, thus satisfying the Due Process Clause.  Respondent further argues that

11  Movant has failed to satisfy the standard for ineffective assistance under the Sixth

12  Amendment.  Respondent contends that counsel's representation of Movant was objectively

13  reasonable throughout the proceedings and that Movant has not shown otherwise.

14  Respondent therefore argues that Movant's request for relief should be denied.

15         Movant's memorandum in support of his motion to vacate seems to merge his due

16  process and ineffective assistance claims.  However, because Movant has identified them as

17  separate claims, the court will address them that way.

18  **A.    Voluntariness of Movant's Guilty Pleas**

19         Movant contends that he was coerced into pleading guilty to the court on March 8,

20  2007.  He claims that the court and his counsel rushed him into pleading without giving him

21  the opportunity to make a knowing and voluntary decision.  He contends that he was unaware

22  he would not receive the benefits of the plea agreement he signed two months earlier.

23         A guilty plea violates the Due Process Clause if it is not knowingly and voluntarily

24  made.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  To determine the validity of a

25  guilty plea, the court must ascertain whether the plea represented a voluntary and intelligent

26  choice among the alternative courses of action open to the defendant.  Hill v. Lockhart, 474

27  U.S. 52, 56 (1985). A defendant's contemporaneous statements regarding his understanding

28  of the plea agreement carry substantial weight in determining the voluntariness of a guilty

1    plea.  United States v. Mims, 928 F.2d 310, 313 (9th Cir. 1991).  The court may properly

2    credit a defendant's testimony at a hearing regarding entry of a guilty plea over any

3    subsequent declarations to the contrary.  See United States v. Castello, 724 F.2d 813, 815

4    (9th Cir. 1984).

5         Movant's claims regarding the voluntariness of his guilty pleas find no support in the

6    record.  Movant first attempted to plead guilty on January 11, 2007, pursuant to a plea

7    agreement that called for him to plead guilty to one count of conspiracy to possess with intent

8    to distribute methamphetamine in exchange for a sentence not to exceed 180 months in

9    prison. Doc. 11, Exh. D.  Movant ensured the court that he understood everything that was

10   going on and that he was entering the plea voluntarily.  Id. at 16.  He also stated that he

11   understood everything in the plea agreement.  Id. at 19.  When it came time to establish a

12   factual basis for the offense, however, Movant was evasive and vague with his answers.  Id.

13   at 43-60.  Despite the court's exhaustive efforts to obtain the information, Movant refused

14   to admit the facts necessary to establish the elements of the offense.  Id.  As a result, the court

15   rejected the plea agreement for lack of a factual basis and Movant lost the opportunity to

16   enter the plea agreement.  Id. at 60.

17        On March 8, 2007, a status conference was held in anticipation of the upcoming trial

18   date. Doc. 11, Exh. E.  During that hearing, Movant's counsel explained that Movant wished

19   to plead guilty to the charges in the superseding indictment in exchange for the dismissal of

20   some of the gun counts.  Id. at 5.  At no time during the hearing did Movant dispute that

21   assertion.  The prosecutor explained that there would not be a formal plea agreement but that

22   Movant could exercise his right to plead guilty to specific counts in the superseding

23   indictment and the government could then exercise its right to dismiss, rather than have a

24   trial on, any remaining counts.  Id. at 7.

25        After discussing other issues related to the trial, the court offered to do the change of

26   plea hearing that afternoon, to which, after some discussion, the parties agreed. Doc. 11,

27   Exh. E at 21-24.  During the change of plea hearing, which involved Movant and a co-

28   defendant, Movant stated he wanted to plead guilty.  Id. at 26.  When asked by the court,

Movant said he was satisfied with his lawyer's representation and there was nothing his lawyer should have done that he had not done. Id. at 31. Movant stated that he reviewed the superseding indictment with his lawyer, that he understood the charges and that his lawyer answered all his questions about pleading guilty. Id. at 31-32. Movant further stated that no promises or agreements were made about what his sentence would be. Id. at 32. Movant also stated that no threats were used to get him to plead guilty, that he knew he did not have to plead guilty, and that he was doing so voluntarily and of his own free will with the advice of counsel. Id. at 33.

After explaining the constitutional rights Movant would be giving up by pleading guilty, the court read each of the eight counts from the superseding indictment to which Movant was pleading guilty. Doc. 11, Exh. E at 35-39. Movant agreed that those were the crimes to which he was pleading guilty. Id. at 39. The prosecutor then explained the penalties available for each offense, six of which carried a maximum penalty of life imprisonment. Id. at 40-42. Movant said he understood the available penalties for each of the offenses. Id. at 42. Movant further agreed that he had discussed the sentencing guidelines with his attorney, including how they might apply to him if he entered these guilty pleas. Id. at 44-45. Movant agreed that his precise sentence could not yet be determined and that if his final sentence turned out to be greater than what his lawyer told him it would be, he was still bound by his guilty pleas. Id. at 46.

After the prosecutor read the factual bases for the offenses, Movant agreed that all of the recited facts were true. Doc. 11, Exh. E at 54-63, 63-65. Soon thereafter, Movant stated he understood everything that had been covered and that he had no questions. Id. at 66. Movant then pled guilty to the eight counts. Id. at 67-69.

As the transcript of the March 8, 2007, change of plea establishes, there is simply nothing to support Movant's claims that his guilty pleas were not knowing or voluntary. There is nothing to suggest he was coerced or rushed into pleading guilty, and he expressed no reservations at all when asked if he wanted to plead guilty and if he understood what he was doing. Nor is there any support for his claim that he thought he would receive the

1   benefits of the earlier plea agreement.  The court during the change of plea hearing made
2   clear that, unlike the plea agreement, Movant was agreeing to plead guilty to eight offenses.
3   Moreover, the court made very clear the possible penalties for each offense and that there
4   were no agreements about what the sentences would be.  Movant never expressed at the
5   hearing any misunderstanding about the offenses to which he was pleading or the possible
6   penalties.  Movant's contemporaneous statements during the change of plea hearing
7   demonstrate that he fully understood what he was doing and that his guilty pleas were
8   knowing and voluntary. For these reasons, the court will recommend that Movant's due
9   process claim in ground one be denied.

10  **B.      Ineffective Assistance of Counsel**

11         Movant next contends that his lawyer provided ineffective assistance of counsel in
12  violation of the Sixth Amendment.  Movant claims he lost out on the written plea agreement
13  because his lawyer failed to adequately counsel him and prepare him for the plea agreement
14  proceeding.  Movant contends his lawyer failed to ensure Movant fully understood the
15  agreement and the risks of going to trial.  Movant further claims that his lawyer provided
16  ineffective assistance when he later compelled Movant to plead directly to the court without
17  the benefit of a plea agreement.

18         The two-prong test for establishing ineffective assistance of counsel was established
19  by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an
20  ineffective assistance claim, a convicted defendant must show (1) that counsel's
21  representation fell below an objective standard of reasonableness, and (2) that there is a
22  reasonable probability that, but for counsel's unprofessional errors, the result of the
23  proceeding would have been different.  Strickland, 466 U.S. at 687-88.  "A reasonable
24  probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

25         There is a strong presumption that counsel's conduct falls within the wide range of
26  reasonable assistance.  Strickland, 466 U.S. at 689-90.  "A fair assessment of attorney
27  performance requires that every effort be made to eliminate the distorting effects of
28  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

1   the conduct from counsel's perspective at the time." Id. at 689. "The benchmark for judging
2   any claim of ineffectiveness must be whether counsel's conduct so undermined the proper
3   functioning of the adversarial process that the trial cannot be relied on as having produced
4   a just result." Id. at 686.

5       The Strickland test also applies to ineffective assistance claims arising out of the plea
6   process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). To satisfy the "prejudice" requirement
7   in this context, a defendant must show that "counsel's constitutionally ineffective
8   performance affected the outcome of the plea process." Id. at 59.

## 1.    First Change of Plea Proceeding

10      Movant's contention that his lawyer failed to adequately counsel him about the written
11  plea agreement and failed to prepare him for the change of plea proceeding is not supported
12  by the record. The lawyer against whom these allegations are made was appointed to
13  represent Movant on September 5, 2006, after Movant's retained counsel since August 2005
14  withdrew. Doc. 89 and 175 of CR 05-0546. As the prosecutor explained during a status
15  conference in December 2006, Movant's plea agreement offer had been outstanding for many
16  months while Movant was represented by retained counsel, and was held open after his new
17  lawyer was appointed. Doc. 11, Exh. C at 22- 26. In addition, because Movant was initially
18  apprehensive about entering the plea agreement during the change of plea hearing on January
19  11, 2007, an on the record discussion was held about the plea agreement. Doc. 11, Exh. D
20  at 2-10. Among other things, the court explained that the plea offer called for a sentence
21  between 10 and 15 years. Id. During a 30-minute recess for Movant and his lawyer to
22  further discuss the agreement, Movant decided to execute and proceed with the plea
23  agreement. Id. at 10.

24      During the plea agreement proceeding, Movant said he had an opportunity to fully
25  discuss his case with his lawyer, that he was satisfied with his lawyer's representation and
26  that there was nothing he wanted his lawyer to do that he had not done. Id. at 17. In
27  addition, Movant said he understood everything in the plea agreement. Id. at 19. Movant's
28  only criticism about his lawyer was that he was unable to answer a question, but when the

1   court inquired, Movant's response indicated that his lawyer did answer the question. Id. at

2   18-19.  Movant understood that he did not have to enter the plea agreement but that he was

3   doing so of his own free will because he believed it to be the best option for him. Id. at 20-

4   21.

5       As explained in the voluntariness section, when it came time to establish a factual

6   basis for the offense contained in the plea agreement, Movant was evasive and vague with

7   his answers. Id. at 43-60.  The court and Movant's counsel tried to convey to Movant that

8   without providing a factual basis for the offense, the plea agreement could not go forward.

9   Despite these efforts,  Movant refused to admit the necessary facts, after which the court

10  rejected the plea agreement.

11      Movant has not demonstrated ineffective assistance with regard to the first change of

12  plea proceeding.  Movant presents nothing beyond vague allegations that his lawyer failed

13  to adequately counsel him about the plea agreement.  Movant does not explain how counsel

14  fell short in advising him about the plea agreement.  Moreover, during the proceeding itself,

15  Movant said there was nothing more he wanted his lawyer to do that he had not done.

16  Between counsel's numerous conversations with Movant as reflected in the transcripts and

17  Movant's responses to the court during the proceeding, it is clear to this court that Movant

18  fully understood the terms of the plea agreement and the consequences of not accepting it.

19  Despite that understanding, Movant chose to be evasive and uncooperative when it came to

20  admitting the factual basis for the offense.  Movant has nobody but himself to blame for his

21  failure to obtain the benefits of the plea agreement.  Nothing presented to this court shows

22  deficient performance by his lawyer.

23

24          **2.      Second Change of Plea Proceeding**

25      Likewise, Movant fails to present any evidence of deficient performance by his

26  attorney with respect to the second change of plea proceeding on March 8, 2007.  The

27  discussion of the March 8 proceeding in the section on voluntariness also demonstrates the

28  absence of any evidence of deficient performance.  Movant stated during the proceeding that

1   he was satisfied with his lawyer's representation and there was nothing his lawyer should

2   have done that he had not done.  At no time did Movant allege any coercion or pushing by

3   his lawyer to plead guilty to the eight counts.  Movant's claim that his lawyer compelled him

4   to enter the guilty pleas is unsupported by the record or by any information submitted by

5   Movant.

6          For the foregoing reasons, the court will recommend that Movant's claims of

7   ineffective assistance of counsel in ground two be denied.

8   **C.     Evidentiary Hearing**

9          Lastly, Movant requests in his memorandum that an evidentiary hearing be held in this

10   matter.  28 U.S.C. § 2255 provides that a court shall grant a hearing to determine the issues

11   "[u]nless the motion and the files and records of the case conclusively show that the prisoner

12   is entitled to no relief...."   As explained above, neither the record nor the information

13   submitted by Movant provide support for Movant's claims.  The court therefore finds that

14   an evidentiary hearing is not warranted here.

15   **IT IS THEREFORE RECOMMENDED:**

16          That the Amended Motion to Vacate, Set Aside or Correct Sentence by a Person in

17   Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 7) and the request for an evidentiary

18   hearing be **DENIED**.

19          This recommendation is not an order that is immediately appealable to the Ninth

20   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

21   Appellate Procedure, should not be filed until entry of the district court's judgment.  The

22   parties shall have 14 days from the date of service of a copy of this recommendation within

23   which to file specific written objections with the Court.  See, 28 U.S.C. § 636(b)(1); Fed. R.

24   Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days within which to file a response

25   to the objections.  Failure to timely file objections to the Magistrate Judge's Report and

26   Recommendation may result in the acceptance of the Report and Recommendation by the

27   district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121

28   (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the

Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation.  See Fed. R. Civ. P. 72.

DATED this 31st day of January, 2011.


_____
Edward C. Voss
United States Magistrate Judge